UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JESSICA LACERA,<br>    Plaintiff<br><br>v.<br><br>TOYOTA MOTOR CREDIT CORPORATION<br>d/b/a TOYOTA FINANCIAL SERVICES, and<br>COLONIAL MOTORS, INC.<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    CIVIL ACTION NO.<br><br><br>TRIAL BY JURY DEMANDED<br><br><br><br><br>SEPTEMBER 16, 2020 |

## COMPLAINT

### I. INTRODUCTION

1.  This is a suit brought by a consumer regarding the purchase and sale of a motor vehicle pursuant to a retail installment sales contract.  Plaintiff brings this action to recover actual damages, statutory damages, punitive damages, and reasonable attorney's fees and costs from the defendants.  The Plaintiff claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.,* the Creditor Collection Practices Act, Conn. Gen. Stat., 15 U.S.C. § 1679 *et seq.,* § 36a-645 *et seq.* ("CCPA"), the Credit Repair Organizations Act, the Retail Installment Sales Finance Act ("RISFA"), Conn. Gen. Stat. § 36a-770 *et seq.*, the Article 2 of the Uniform Commercial Code, Conn. Gen. Stat. § 42a-2-101 *et seq.* ("UCC"), and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.* ("CUTPA").

### II. PARTIES

2.  Plaintiff, Jessica Lacera ("Plaintiff"), is a natural person residing in Bridgeport, Connecticut.

1

3. Defendant Toyota Motor Credit Corporation d/b/a Toyota Financial Services ("Toyota Financial") is a California corporation with a principal office in Plano, Texas.

4. Defendant Colonial Motors, Inc. ("Colonial Motors") is a Connecticut corporation that operates a car dealership in Milford, Connecticut.

## III. JURISDICTION

5. Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

6. This court has jurisdiction over Toyota Financial because it regularly conducts business in Connecticut and the subject transaction occurred in this state.

7. This court has jurisdiction over Colonial Motors because it is organized under the laws of the state of Connecticut and it regularly conducts business in this state.

8. Venue in this court is proper because the Plaintiff resides in Connecticut and the claims involve a transaction that occurred in Connecticut.

## IV. FACTUAL ALLEGATIONS

9. Prior to January 30, 2020, Colonial Motors advertised a 2016 Toyota Sienna (the "Vehicle") for a cash price of $26,991.

10. On or about January 30, 2020, Plaintiff accompanied Carlos Rivera ("Rivera") to Colonial Motors to have new locks installed in a 2014 Toyota Sienna owned by Rivera after the vehicle had been stolen and recovered.

11. While at the dealership, Colonial Motors suggested that Rivera purchase a newer vehicle instead of installing the new locks, and Colonial Motors told Rivera, in the presence of Plaintiff, that it would put Rivera's 2014 Toyota Sienna in auction, that it was going to "sell good", and Colonial Motors would pay off the loan balance owed by Rivera from the proceeds.

12. Rivera completed a credit application and was informed by Colonial Motors that his application had been denied.

13. Colonial Motors pressured Plaintiff to submit a credit application in her name, even though it knew the Vehicle was being purchased for use by Rivera.

14. Plaintiff told Colonial Motors that she was disabled and not employed, and that she had not worked in three years.

15. Colonial Motors asked Plaintiff where she previously worked, and she responded that she used to work at Growing Seeds, a child care facility.

16. Colonial Motors also asked Plaintiff how much she paid for rent, and Plaintiff responded that she paid $1,800 per month.

17. Colonial Motors prepared a credit application on behalf of Plaintiff and submitted it to Toyota Financial. Colonial Motors told Plaintiff she was approved for the loan.

18. Colonial Motors engaged in credit application fraud in order to secure the approval by listing income from Growing Sees and, upon information and belief, by not listing the full amount owed by Plaintiff for rent, in order to induce Toyota Financial into approving Plaintiff's credit application.

19. Plaintiff had been at Colonial Motors for approximately 6 hours before she met with Eric Piddington ("Piddington"), the finance manager. By this time, Plaintiff was tired and hungry, and she was not feeling well due to various medical conditions.

20. Plaintiff asked Piddington what the monthly loan payments would be, and he showed her a worksheet known as a four square on his tablet and told her the monthly payments would be $609.

21. Plaintiff agreed to purchase the Vehicle, and Colonial Motors prepared a retail installment contract (the "Contract") for the sale of the Vehicle.

22. Piddington told Plaintiff she "qualified" for tires and wheels, Portfolio, and GAP, but he did not tell her that these products were at an additional charge, and she did not request or desire these additional services.

23. Colonial Motors had Plaintiff sign the Contract documents electronically on a pad. At the time she signed electronically, the monitor was facing towards Piddington, and Plaintiff was unable to read the documents.

24. When Plaintiff tried to read the contract, Piddington told her she "did not need" to read the documents because he would explain them to her.

25. Unbeknownst to Plaintiff, the Contract included Rivera's 2014 Toyota Sienna as a trade-in, and it included a balance for negative equity for the trade-in the amount of $7,499 that was added to the amount financed in the new contract for the Vehicle.

26. Plaintiff did not own the 2014 Toyota Sienna, she did not agree to assume responsibility for the negative equity in that vehicle, she did not know that Colonial

4

Motors had falsely and fraudulently included it as a trade-in, and she did not know that she would be responsible for the payoff of the loan securing that vehicle.

27. Colonial Motors also quoted Plaintiff a price for insurance on the Vehicle for $226.00 per month.

28. When Plaintiff received a statement for the insurance coverage, she learned that the cost was over $400 per month.

29. Colonial Motors assigned the Contract to Toyota Financial.

30. The Contract included the following language as mandated by the Federal Trade Commission Holder Rule:

NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

31. When Plaintiff received her first statement from Toyota Financial, she was shocked to discover that the monthly payment was $726.00, which was substantially more than the amount that had been quoted to her by Colonial Toyota.

32. Concerned, Plaintiff called Toyota Financial and inquired as to why the monthly payment was so high, and she also asked about the information provided on the credit application.

33. Toyota Financial told Plaintiff that her credit application listed her employer as Growing Seeds and that the contract included charges for a service contract in the amount of $4,995, a GAP addendum in the amount of $995, and a tires and wheel protection contract in the amount of $1,261.00.

34. Colonial Motors had not provided Plaintiff with a copy of the GAP addendum, service contract or tires and wheel contract, and she was not aware that they were included in the Contract, and she had neither requested nor desired these extra items.

35. Instead of seeking to investigate Colonial Motors' malfeasance, Toyota Financial told Plaintiff that they could not help her since she had signed the contract documents.

36. Plaintiff requested the cancellation of the service contract, but Colonial Motors has failed to cancel the contract and refund any amounts to Plaintiff.

37. On or about April 2, 2020, Plaintiff returned the Vehicle to Colonial Motors restoring Defendants as nearly as possible to their pre-contractual position.

38. On or about April 2, 2020, Plaintiff sent written notice through counsel to Colonial Motors and Toyota Financial informing them that Plaintiff had revoked acceptance of the Vehicle or, alternatively, had elected to rescind the Contract.

39. In the letter, Plaintiff demanded a return of all sums paid under the Contact, and she disputed any further indebtedness under the Contract (the "Letter").

40. Plaintiff also provided written notice at that time that she was represented by counsel and that all future communications should be through counsel, whose address was provided.

41. The letter further informed Toyota Financial that all future communications should be directed to Plaintiff's counsel, and the letter included the address and phone number for Plaintiff's counsel.

42. Neither Colonial Motors nor Toyota Financial have refunded any amounts to Plaintiff.

43. Subsequent to Plaintiff's notice that she had revoked acceptance, Toyota Financial reported the account to the three major consumer reporting agencies, Equifax Information Services, Experian, and Trans Union (the "CRA's") as a repossession and past due account, even though Toyota Financial knew that Plaintiff disputed the debt.

44. Toyota Financial's reporting that the Vehicle had been repossessed was inaccurate, because Plaintiff had asserted a revocation of acceptance and had accordingly returned the Vehicle to the defendants.

45. On or about May 14, 2020, Plaintiff, by her counsel, sent letters to the three CRA's providing them with information regarding the disputed nature of the account with Toyota Financial, and requesting they investigate the reporting.

46. The CRAs made an inquiry of Toyota Financial and asked it to investigate its records and to either verify or update its reporting.

47. Despite its actual knowledge that Plaintiff disputed the indebtedness, Toyota Financial improperly and inaccurately verified to the CRA's that its reporting was accurate, and it failed in its response to acknowledge that Plaintiff had disputed the claimed debt.

48. As a consequence of Toyota Financial's response, the CRAs continued to report the claimed debt negatively without any reference to the dispute.

49. In or around July 2020, Plaintiff applied to Synchrony Bank for a JC Penney brand credit card but was rejected in whole or in part due to the negative reporting by TransUnion regarding the Toyota Financial account.

50. On various dates, including May 1, May 6, and September 8, 2020, Toyota Financial sent written communications directly to the Plaintiff in an attempt to collect the disputed debt despite the fact that it was aware that Plaintiff was represented by counsel and had counsel's contact information.

## V. CAUSES OF ACTION

### A.   FAIR CREDIT REPORTING ACT (Toyota Financial)

51. Toyota Financial is a person as that term is defined by the FCRA, 15 U.S.C. § 1681a(b) and a furnisher of information to consumer reporting agencies as contemplated by the FCRA, § 1681s-2.

52. 15 U.S.C. § 1681s-2(a)(1)(A) prohibited Toyota Financial from reporting information that it had reasonable cause to know was inaccurate to CRAs.

53. Toyota Financial violated 15 U.S.C. § 1681s-2(a)(1)(A).

54. 15 U.S.C. § 1681s-2(a)(1)(B) prohibited Toyota Financial from furnishing information to the CRAs after being notified by Plaintiff that information on her reports was inaccurate when it was in fact inaccurate.

55. Toyota Financial violated 15 U.S.C. § 1681s-2(a)(1)(B).

56. 15 U.S.C. § 1681s-2(a)(2) creates a duty for Toyota Financial to correct and update information that it has furnished to CRAs and it has learned that information reported was inaccurate or incomplete.

57. Pursuant to 15 U.S.C. § 1681s-2(b), upon notification from CRAs that the information on the Plaintiff's consumer report was disputed by as inaccurate, Toyota Financial had a duty to conduct an investigation with respect to the disputed information and review all relevant information provided by the CRAs.

58. Toyota Financial violated 15 U.S.C. § 1681s-2(b), for which a private right of action exists, by its negligence in failing to investigate the disputed information.

59. Toyota Financial is liable to Plaintiff for her damages and a reasonable attorney's fee pursuant to 15 U.S.C. § 1681o.

60. Toyota Financial's failure to investigate the disputed information was willful, and it is also liable to Plaintiff for punitive damages and statutory damages pursuant to 15 U.S.C. § 1681n.

**B.    CREDITOR COLLECTION PRACTICES ACT (Toyota Financial Only)**

61. Toyota Financial violated the CCPA by communicating directly with Plaintiff after it had been notified in the Letter that she was represented by legal counsel and had been notified of his counsel's name and address, a violation of Conn. Agencies Reg. § 36a-647-4(a)(2).

62. For Toyota Financial's violations of the CCPA, Plaintiff is entitled to damages, statutory damages of up to $1,000, attorney's fees and costs pursuant to Conn. Gen. Stat. § 36a-648.

**C.    CREDIT REPAIR ORGANIZATIONS ACT (Colonial Toyota)**

63. Colonial Toyota violated the CROA, 15 U.S.C. § 1679b(1)(B), by knowingly or negligently making untrue and misleading statements to Toyota Financial with respect to Plaintiff's creditworthiness in order to induce Toyota Financial to approve Plaintiff's credit application.

64. Colonial Toyota is liable to Plaintiff for her actual damages, punitive damages, and attorney's fee pursuant to 15 U.S.C. § 1679g.

**D.     RETAIL INSTALLMENT SALES FINANCING ACT (Both Defendants)**

65.     Because Plaintiff did not own Rivera's 2014 Toyota Sienna and was not subject to payment of the loan on that vehicle, the 2014 Toyota Sienna was not a trade-in vehicle.

66.     By listing a false trade-in, Colonial Motors violated RISFA, Conn. Gen. Stat. § 36a-771(a), which requires that all essential provisions of the contract be included in the retail installment contract.

67.     Colonial Motors' violations were willful, wanton and in disregard of Plaintiff's rights, and Colonial Motors is therefore not entitled to a deficiency under the Contract and is barred from recovering any finance, delinquency or collection charge or any interest under the Contract.

68.     Colonial Motors and Toyota Financial have been restored to their pre-contractual position as nearly as possible because the Vehicle was returned to them.

69.     Plaintiff is entitled to a rescission of the Contract due to the violations of RISFA, and a return of all payments made.

70.     As assignee of the Contract, Toyota Financial is subject to claims and defenses that could be asserted against Colonial Motors pursuant to the terms of the Contract and pursuant to Conn. Gen. Stat. § 52-572g.

71.     Additionally, Pursuant to Conn. Gen. Stat. § 42-150bb, Plaintiff is entitled to attorney's fees and costs.

**E.     COUNT FOUR: REVOCATION OF ACCEPTANCE DUE TO FRAUD OR MATERIAL MISREPRESENTATION (Both Defendants)**

72.     This Count is asserted in the alternative to the rescission count.

73. Colonial Motors further made false statements or material misrepresentations regarding the manner in which the 2014 Toyota Sienna and the underlying debt would be resolved, the amount of the monthly payment, the cash price of the Vehicle, and the cost of insurance for the vehicle.  This conduct and representations constitute material misrepresentations or fraud within the meaning of Conn. Gen. Stat. § 42a-2-721.

74. Plaintiff is entitled to an order that she validly and effectively revoked acceptance of the Vehicle pursuant to Conn. Gen. Stat. § 42a-2-608 and § 42a-2-721.

75. Toyota Financial is liable to Plaintiff as assignee of the Contract pursuant to the terms of the Contract and Conn. Gen. Stat. § 52-572g.

**F.    CONNECTICUT UNFAIR TRADE PRACTICES ACT**

76. Colonial Motors' actions as alleged above also violated CUTPA.

77. Specifically, Colonial Motors' violated CUTPA in the following ways:

    a. Its RISFA violations;

    b. Its CROA violations;

    c. Its false representation that the 2014 Toyota Sienna would be sold at auction and the proceeds utilized to pay-off the underlying debt;

    d. Its surreptitious inclusion of the 2014 Toyota Sienna as a trade-in and the inclusion of the negative equity in the Contract when Plaintiff did not own that vehicle and was not responsible for the indebtedness;

    e. It listed a fake trade-in on the Contract;

    f. It sold the Vehicle for more than the advertised price;

      g.    Its false and deceptive statements regarding the amount of the monthly loan payments;

      h.    It made false and deceptive statements regarding the amount of the monthly insurance payments;

      i.    It committed credit application fraud by falsely listing an income for Plaintiff, listing a false trade-in, and understating Plaintiff's rental obligations;

      j.    It charged Plaintiff for a GAP addendum, service contract and tires and wheel contract that was neither requested nor desired, and it failed to provide her with copies of the contracts; and

      k.    It failed or refused to cancel the service contract.

78.    Colonial Motors' conduct, as aforedescribed, was deceptive and unfair and in violation of CUTPA, and it has caused Plaintiff to suffer ascertainable losses and damages in that she was charged more than the advertised price, she incurred much higher loan and insurance payments than agreed upon, she paid for a service contract that she did not request or desire, she is responsible for a loan that she did not desire, and she suffered harm to her credit.

79.    Plaintiff is entitled to actual damages, punitive damages, and attorney's fees.

80.    Toyota Financial is liable to Plaintiff as assignee pursuant to the express terms of the Contract and Conn. Gen. Stat. § 52-572g.

Wherefore, Plaintiff claims actual damages, statutory damages of up to $1,000 under the CCPA, punitive damages, attorney's fees and costs, an order stating the Plaintiff validly revoked acceptance of the Vehicle and/or rescinded the Contract, and any other relief deemed just and equitable by this court.

        PLAINTIFF, JESSICA LACERA

By: */s/ Daniel S. Blinn*
     Daniel S. Blinn (ct02188)
     Brendan L. Mahoney (ct29839)
     Consumer Law Group, LLC
     35 Cold Spring Rd. Suite 512
     Rocky Hill, CT  06067
     Tel. (860) 571-0408
     Fax. (860) 571-7457
     dblinn@consumerlawgroup.com
     bmahoney@consumerlawgroup.com